**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sammy Cruz,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Cameron Financial Group Incorporated, et al.,<br><br>　　　　　　Defendants. | No. CV-23-01112-PHX-SMB<br><br>**ORDER** |

Pending before the Court is Defendant Specialized Loan Servicing, LLC's ("SLS") Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 19). Plaintiff filed a response (Doc. 23), to which SLS filed a reply (Doc. 24). After considering the parties' arguments and relevant case law, the Court will grant in part and deny in part the Motion.

**I.    BACKGROUND**

In March 2006, Plaintiff purchased a home (the "Property") in Gilbert, Arizona for $854,814. (Doc. 1-3 at 4 ¶ 9.) To make this purchase, Plaintiff acquired two loans from Defendant Cameron Financial Group, Inc. ("Cameron Financial"). The first loan (the "First Loan") was in the amount of $650,000, and the second loan (the "Second Loan") was in the amount of $200,000. (*Id.* ¶ 12.) Both loans were secured by a deed of trust. (*Id.* ¶ 13.) This case concerns the Second Loan, which required a monthly payment of $2,134.52 at a rate of 12.5 percent per annum and included a late charge provision. (*Id.* at 4–5 ¶¶ 14–15.) Defendant SLS is the servicer of the Second Loan. (*Id.* at 69–70; Doc. 19

at 2.)

In 2009, Plaintiff began experiencing financial difficulties and could no longer make the monthly payments on the Second Loan. (Doc. 1-3 at 5 ¶ 16.) Plaintiff subsequently filed for Chapter 7 Bankruptcy, and Plaintiff alleges that the Second Loan was discharged on April 9, 2010. (*Id.* ¶ 18.) In July 2022, SLS sent Plaintiff a Default Notice and Notice of Intent to Foreclose to Plaintiff. (*Id.* ¶ 19.) This letter stated that Plaintiff was required to pay SLS $345,135.08 to cure the arrears on the Second Loan as of July 21, 2022. (*Id.* at 69–70.) In response, Plaintiff sent a Qualified Written Request ("QWR") informing SLS of the six-year statute of limitations issue. (*Id.* at 5–6 ¶¶ 22, 25.) Plaintiff asserts that SLS responded a month later requesting additional time to consider the issue. (*Id.* at 6 ¶ 25.)

In December 2022, SLS replied, stating that "[w]ithout waiver of any rights or remedies it may have under the law, SLS has advanced the loan's Next Due date to April 1, 2017." (*Id.* at 72.) The letter further clarified that "[t]he individual installment payments prior to April 1, 2017, related penalties, interest, and service charges will not be collected upon." (*Id.*) Lastly, the letter noted that although Plaintiff's personal liability for the debt was discharged, the lien on the property remains until the Second Loan is satisfied. (*Id.*)

In response, Plaintiff sent another QWR requesting additional information on the Second Loan. (*Id.* at 6 ¶ 30.) SLS responded on February 15, 2023 and clarified that $323,943.92 was required to settle the Second Loan. (*Id.* at 76.) This included $185,270.84 in principal and $138,038.08 in interest calculated from April 1, 2017 at 12.5 percent. (*Id.*) The letter also included a record of Plaintiff's payment history on the Second Loan. (*Id.* at 76–105.) SLS then sent another Default Notice and Notice of Intent to Foreclose. (*Id.* at 107–08.) On May 10, 2023, Plaintiff filed this action in Maricopa County Superior Court. (*Id.* at 2–21.) Defendant removed this case to federal court and subsequently filed this Motion. (Doc. 1; Doc. 19.)

II. **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the

claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This requirement is met if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials— documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## III. DISCUSSION

### A. Count I: Negligent Performance of an Undertaking

Plaintiff alleges that through their actions, SLS negligently undertook the servicing and administration of the Second Loan. (Doc. 1-3 at 10 ¶ 45.) SLS argues that Plaintiff fails to sufficiently plead this claim. (Doc. 19 at 3–4.) First, SLS argues that the relationship between a lender and a borrower is not a fiduciary relationship. (*Id.*) Second, SLS contends that even if they did owe a duty to Plaintiff, they did not breach it because loan servicing is not an "undertaking" and they did not create any "economic harm." (Doc. 24 at 3–4.) Plaintiff counters that the Good Samaritan Doctrine is applicable and that SLS' failure to pursue payments on the Second Loan for thirteen years constitutes a negligent undertaking. (Doc. 1-3 at 11 ¶ 48.) Plaintiff also argues that SLS violated 12 C.F.R. § 1026.41, which requires mortgage servicers to provide periodic statements to consumers. (*Id.* at 9 ¶ 42.)

Arizona follows the Restatement (Second) of Torts for the tort of negligent performance of an undertaking. *Steinberger v. McVey ex rel. County of Maricopa*, 318 P.3d. 419, 430–31 (Ariz. Ct. App. 2014). The tort is recognized as:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (Am. L. Inst. 1965). A party may assume the duty to act with reasonable care in this circumstance even if the other party had no duty to do so. *Steinberger*, 318 P.3d at 431. This is referred to as the Good Samaritan Doctrine, which provides that a party may be liable for negligent performance of an assumed duty by either "(1) increasing the risk of harm to another, or (2) causing another to suffer harm because he or she relied on the party exercising reasonable care in undertaking the duty." *Id.* (citing Restatement (Second) of Torts § 323).

Additionally, this doctrine is applicable to both physical and economic harm. *Id.*

- 4 -

However, to sufficiently plead economic harm, a plaintiff must show that (1) defendants undertook to render services that they should have recognized were necessary for the protection of the property, (2) defendants' failure to exercise reasonable care while doing so increased the risk of harm, and (3) the plaintiff was in fact harmed because of defendants' actions. *Id.*

Here, SLS is correct that as the servicer of the Second Loan, they do not owe Plaintiff a fiduciary duty. *McAlister v. Citibank*, 829 P.2d 1253, 1258 (Ariz. Ct. App. 1992). Instead, they only owe the general duty of reasonable care as outlined by the Restatement. This general, non-contractual duty "is narrow, and generally limited to the duty to disclose to borrowers the correct amount of monthly payments due under their loan agreement." *McMillan v. Wells Fargo Bank*, 2013 WL 11522057, at *6 (D. Ariz. Apr. 11, 2013). But even if a loan servicer's duty of care is limited, it remains a duty and extends to the responsibility to disclose correct information and properly service the account. *McIntosh v. IndyMac Bank, FSB*, No. CV-11-1805-PHX-GMS, 2012 WL 176316, at *3 (D. Ariz. Jan. 23, 2012).

Here, Plaintiff has set forth sufficient factual content to plead this claim. Plaintiff asserts that SLS could have communicated with him about the complete and accurate accounting of the Second Loan but chose not to. (Doc. 1-2 at 10–11 ¶¶ 44–47.) Instead, they assert that SLS chose to remain silent and allowed interest, late fees and other charges to accrue to the point that there would be no way Plaintiff could pay off the mortgage. (*Id.*) Plaintiff specifically asserts by allowing the Second Loan to accrue for so long without any notice, SLS has rendered it impossible for him to either plan for or have the ability to pay back the balance—thereby forcing him into foreclosure. (*Id.* at 11–12 ¶¶ 51–52.) Plaintiff also contends this given the unreasonably long period of silence and his bankruptcy, he believed the Second Loan was forgiven and that SLS is now trying to resurrect this "Zombie Mortgage." (*Id.* at ¶¶ 43–45.) Plaintiff defines this term as "mortgages that consumers were led to believe were forgiven and/or have been neglected by mortgage lenders and servicers through their long periods of silence, lack of communication with the

borrower, and their failure to continue to send statements to the borrower." (Doc. 23 at 3.)

On their face, these allegations meet the tort's requirements. Plaintiff properly asserts that SLS owed a duty and through their actions, increased the risk of his economic harm by allowing the Second Loan to accrue interest and fees and not providing him with any notice or communication for several years. (*Id.* at 8.) Moreover, Plaintiff has alleged that SLS rendered a service, that SLS' failure to properly exercise reasonable care in rendering this service increased the risk of harm, and that he was harmed due to these actions. These allegations therefore sufficiently plead economic harm at this stage. *See Steinberger*, 318 P.3d at 431. Lastly, these allegations fall within the bounds set out by *McMillan* and *McIntosh*, as SLS' duty extends to providing correct information and properly servicing the account.

Additionally, Plaintiff claims a violation of 12 C.F.R. § 1026.41. (Doc. 1-3 at 9 ¶ 42.) This is the federal regulation implementing the Truth in Lending Act ("TILA"). 15 U.S.C. § 1601 *et seq.*; *Alphonso v. Real Time Resols., Inc.*, No. 23-cv-01488-JSC, 2023 WL 3794502, at *3 (N.D. Cal. June 2, 2023). SLS provides no counterargument. (*See* Doc. 19 and Doc. 24.) The regulation requires a mortgage loan servicer to provide the consumer a periodic statement for each billing cycle. 12 C.F.R. § 1026.41(a)(2). Here, Plaintiff asserts that SLS failed to send him these required periodic statements. Therefore, this claim is plausible on its face, particularly when construed in the light most favorable to Plaintiff. *See Iqbal*, 556 U.S. at 678.

Accordingly, the Court will not dismiss Count I.

**B.  Count II and Count III: Declaratory Judgment and Injunctive Relief**

Plaintiff next asserts, as a separate cause of action, that the Court issue a declaratory judgment declaring that SLS cannot foreclose on the Property, that the amount sought by SLS is unreasonable and unlawful, that Plaintiff is not in default on the Second Loan, and that SLS must issue a retraction of its default notice. (Doc. 1-3 at 16 ¶ 78.) Plaintiff bases his request on the doctrines on laches and unconscionability and argues that SLS' lack of contact for thirteen years caused untenable amounts of interest and fees to accrue. (*Id.* at

17 ¶¶ 81–85.) Plaintiff also requests "injunctive relief" as a separate cause of action. (*Id.* at 17–18 ¶¶ 86–91.) Plaintiff is ostensibly seeking an injunction to enjoin SLS from foreclosing on the Property. (*Id.* at 18 ¶ 90.)

However, injunctions and declaratory judgments are *remedies* for underlying causes of actions. They are not causes of action in their own right—and therefore cannot be pleaded as such. *RHN Inc. v. CNA Nat'l Warranty Corp.*, No. CV-19-02960-PHX-GMS, 2019 WL 4345332 (D. Ariz. Sept. 12, 2019). This principle has been confirmed repeatedly in case law. *See, e.g.*, *Lorona v. Ariz. Summit Law School*, 151 F. Supp. 3d 978, 997 (D. Ariz. 2015) (dismissing plaintiff's claims for declaratory and injunctive relief to the extent they were pleaded as separate counts); *Stejic v. Aurora Loan Services, LLC,* CV-10-51-PHX-DGC, 2010 WL 4220570, at *4 (D. Ariz. Oct. 20, 2010) (noting that an injunction "is not an independent cause of action, but an equitable remedy for an underlying claim"); *Silvas v. GMAC Mortg., LLC*, CV-09-265-PHX-GMS, 2009 WL 4573234, at *6 (D. Ariz. Dec. 1, 2009) (finding that injunctions and declaratory judgments are remedies, not separate causes of action).

To the extent that Plaintiff pleads his requests for declaratory and injunctive relief as separate causes of actions, they are dismissed without prejudice. Going forward, Plaintiff may pursue these remedies as proper forms of relief for valid claims.

### C. Count IV: Accounting

Finally, Plaintiff states a claim for an "accounting." (Doc. 1-3 at 18 ¶¶ 92–93.) Like a declaratory judgment or injunctive relief, an accounting is a *remedy* sought in conjunction with a separate cause of action. *Stoyanof v. Crocodiles Not Waterlilies, L.L.C.*, Civ. No. 11-00384 HWG, 2012 WL 13024085, at *6 (D. Ariz. Feb. 16, 2012). It is not a cause of action on its own. *Id.* Here, Plaintiff's "claim" is best understood as a demand for the final calculation and the supporting records of the amount owed on the Second Loan. (*Id.*) But an accounting occurs when the court, sitting in equity, examines the accounts and renders a judgment of the balance due to the prevailing party. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478–79 (1962). It is not a mere request for a court order to turn over records.

Moreover, at this stage, SLS argues that it has already provided Plaintiff with the records he requests in response to his written inquiries. (Doc. 19 at 7.) The record currently supports that assertion. (*See* Doc. 1-3 at 76–105.)

To the extent that Plaintiff pleads its claim for accounting as a cause of action, it is dismissed.

## IV. CONCLUSION

For the reasons discussed above,

**IT IS HEREBY ORDERED granting in part and denying in part** Defendant SLS' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 19).

**IT IS FURTHER ORDERED denying** the Motion as to Count I.

**IT IS FURTHER ORDERED granting** the Motion as to Count II, Count III, and Count IV. These claims are dismissed with prejudice. However, through this Order, the Court is not limiting the future use of declaratory judgments, injunctive relief, or accounting as potential remedies.

Dated this 29th day of January, 2024.

_____
Honorable Susan M. Brnovich
United States District Judge